## S. S. STARR v. STATE.

No. A-1355.    Opinion Filed July 20, 1912.

(124 Pac. 1104.)

1.    APPEAL—Reception of Incompetent Evidence. As a general rule, a defendant is entitled to be tried on legal evidence alone, but this does not mean that a conviction will be necessarily reversed because of the reception of incompetent testimony.

2.    SAME—Harmless Error. The admission of hearsay evidence as to the possession of property alleged to have been stolen in a larceny case is harmless error, where the defense is that such property was honestly in possession of the defendant in good faith, and as the result of a legal purchase.

3.    EVIDENCE—Res Gestae—Other Crimes. In a prosecution for larceny of two cows, evidence that other cattle were taken from the same range at the same time is properly admitted as a part of the res gestae to negative the idea of mistake and to show the intent with which the cattle were taken.

4.    APPEAL—Harmless Error. Under the plain mandates of the statutes of this state, judgments of trial courts should not be reversed upon appeal on any technicality or exception, unless it appears from the record that appellant was thereby deprived of some substantial right, to his injury.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County;*
*R. C. Allen, Judge.*

S. S. Starr was convicted of grand larceny, and appeals. Affirmed.

*S. M. Rutherford,* for appellant.

*Smith C. Matson* and *Joseph L. Hull,* Asst. Attys. Gen., for the State.

FURMAN, P. J. This is a companion case to that of *Davis v. State, ante,* 123 Pac. 560.

The facts of this case are the same as the facts stated in Davis' case, except that a number of additional witnesses testified against appellant whose testimony was not available when Davis was on trial.

Clifford Sellers testified for the state that, at the request of appellant, Starr, he assisted appellant and Bob Davis in driving the cattle in question from the Briartown range in Muskogee county on June 14, 1910; that among them were the two head of cattle belonging to T. J. Jemison alleged to have been stolen; that Leonard McCullough assisted them in driving these cattle from their range to Checotah, where they were shipped by Davis and Starr to a commission house in Kansas City and sold; that on Saturday, a week after the theft was committed, witness was informed that warrants were out for the arrest of the parties above named, and for several days they hid out in the mountains near Porum; that in a few days appellant and Davis decided to surrender themselves; that, after giving up and giving bond, they met witness at the house of one Sis Starr, and told witness he must leave the country; that, if he and a man named H. L. Foster would leave, appellant and Davis could beat the case, and that they never permitted any person to testify in court against them; that they told witness to meet them in Tahlequah; that witness and Foster went to Tahlequah and stayed at the house of one Carlyle until Starr and Davis came; that Starr and Davis then gave witness and Foster each $100 with which to leave the state; that witness and Foster then went to Montana. H. L. Foster corroborated the statement of the witness Sellers. There is testimony in the record from which it appears that Foster was also an accomplice in the theft committed. A number of other witnesses were sworn whose testimony corroborated the testimony of Sellers and Foster.

In view of the full statement of the evidence in the case of *Davis v. State* above referred to, it is not necessary that we should incumber the record by stating the evidence in detail. The evidence for the state, if believed by the jury, made out a plain, straight case of cow stealing. We see nothing in the record to cause us to believe that the jury was not fully justified in accepting the testimony for the state and in rejecting the testimony for the defense. It is insisted, however, in the brief of counsel for appellant that this conviction should be reversed because of

some hearsay evidence which is alleged to have been improperly admitted as to the possession of the stolen property.

It is not necessary for us to discuss this question, because, even if the evidence was improperly admitted, it was harmless. The defense is that appellant's codefendant Davis was honestly in the possession of the cattle, having purchased them in good faith. Therefore the question of possession of this property was not in issue. Appellant could not possibly have been injured by evidence which was in harmony with his own defense.

In the case of *Rhea v. Territory*, 3 Okla. Cr. 230, 105 Pac 314, this court said:

"It is true as a general rule a defendant is entitled to be tried on legal evidence alone, but from this it does not necessarily result that a reversal should follow the reception of incompetent testimony in every case. The Court of Criminal Appeals of Texas has time and again decided that the admission of incompetent evidence, which could not have prejudiced the defendant, is not cause for reversal. *Avery v. State*, 10 Tex. App. 199-212; *Post v. State*, 10 Tex. App. 579-595; *Logan v. State*, 17 Tex. App. 50-57; *Bond v. State*, 20 Tex. App. 421; *Hooper v. State*, 29 Tex. App. 614, 616, 16 S. W. 655; *Sargent v. State*, 35 Tex. Cr. R. 325-337, 33 S. W. 364; *Shaw v. State*, 39 Tex. Cr. R. 162, 45 S. W. 597; *Roberts v. State* [Tex. App.] 16 S. W. 255; *Lettz v. State* [Tex. Cr. App.] 21 S. W. 371. In the case of *Stephens v. State* [Tex. Cr. App.] 26 S. W. 728, it is held that, although evidence may be improperly admitted against a defendant, if he takes the stand and testifies to the same thing, the error is harmless."

The twelfth ground relied upon for a reversal of this conviction is presented in the brief of counsel for appellant, as follows:

"Because the court erred in permitting the county attorney to prove by the witness J. W. Jemison, being one of the men from whom cattle were alleged to have been stolen, the following: 'Direct examination by the county attorney: Q. Did you lose any cattle at that time? A. Yes, sir. By Mr. Rutherford: We object to the question, and ask that it be stricken. By the Court: Overruled. . By Mr. Rutherford: To which we except as incompetent, irrelevant, and immaterial, and as improper testimony. Q. How many did you lose? A. Two. Q. Did your brother lose any? By Mr. Rutherford: We object to that question. By

7 Cr.—18

the Court: Objection overruled. By Mr. Rutherford: Exception. A. Yes, sir. Q. How many? A. Two. Q. Do you know of any of your neighbors there losing any cattle at the same time? By Mr. Rutherford: We object to that question. By the Court: Overruled. By Mr. Rutherford: To which we except. A. Yes, sir. Q. Well, name them, and tell how many they lost, if you know. By Mr. Rutherford: We object to that question as incompetent, irrelevant and immaterial. By the Court: Objection overruled. By Mr. Rutherford: Exception. A. Brashears lost two, Jim McClure lost one; old man Wilcox lost one; Mullens lost one. I don't know whether I can call all of them. There were several."

It was shown that these cattle all ran together on the same range, and were all taken at the same time. The evidence objected to was a part of the *res gestae,* and was admissible to negative the idea of a mistake and to prove the intent with which the cattle were taken.

Every inch of ground in this case was ably and stubbornly contested in the court below by counsel for appellant, and exceptions were reserved to nearly everything done during the trial. That appellant was convicted was in no manner due to want of zeal and ability on the part of his counsel. A most elaborate brief of 50 printed pages has been filed in this court in which every possible objection is presented that could be thought of to the proceedings in the court below. In every hotly contested case irregularities are likely to occur; but under the plain mandates of the statutes which we are sworn to enforce we cannot set aside judgments of trial courts upon any technicality or exception, unless it appears from the record that appellant was thereby deprived of some substantial right, to his injury. We find no such error in this record.

Appellate courts should never forget that laws are enacted and courts are established at great expense to the state for the sole and exclusive purpose of enforcing justice, suppressing crime, and protecting society. All of their decisions should make these objects the paramount consideration to be consulted. It would be a gross abuse of our power if we were to ignore the statutes of this state, and attempt to build up a technical system

in Oklahoma which would result in encouraging crime and in protecting criminals, to the injury of society.

From the record it appears that appellant has been fairly tried and justly convicted. The judgment of the lower court is therefore in all things affirmed.

DOYLE, J., concurs; ARMSTRONG, J., not participating.