## E. C. CAMPION et al. v. STATE.

No. A-8642. April 20, 1934.
Rehearing Denied May 25, 1934.
(33 Pac. [2d] 511.)

Corn & Corn, and Mathers & Mathers, for plaintiffs in error.

J. Berry King, Atty. Gen., and Jesse L. Ballard, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiffs in error, hereinafter referred to as the defendants, were by information jointly charged with a violation of the state election law, jointly tried, and the jury returned a verdict of guilty against each of the defendants on the second count in the information, leaving the punishment to the court. The

court sentenced the defendants to the following terms: E. C. Campion, two years in the state penitentiary at McAlester; E. G. Boyd, two years in the state penitentiary at McAlester; and R. Y. Abercrombie, three years in the state penitentiary at McAlester.

An abstract of the testimony is as follows: A run-off primary was held on July 26, 1932, in Dewey county, Okla.; the names of B. F. Evans and W. W. Mitchell appeared on the official county ballot of Dewey county, as candidates seeking the nomination for the office of county commissioner of district No. 2; 100 official ballots for the Democratic ticket had been furnished by the state election board to the election officers of Boyd precinct No. 2; the defendants were members of the precinct election board for Boyd precinct No. 2, R. Y. Abercrombie being the inspector, E. C. Campion the judge, and E. G. Boyd the clerk; the record shows these defendants had had experience in serving as members of the election board.

The record further discloses that of the 100 ballots furnished, 77 were shown by the precinct counters to have been used by the voters at the said election; of the 77 ballots used W. W. Mitchell is credited with having received 36 votes; his opponent B. F. Evans receiving 23 votes, showing that for the two candidates seeking the nomination for county commissioner only 59 of the 77 votes were voted for the two candidates; there being 18 of the 77 votes cast that were not counted for either of the said candidates.

It is further shown that of the 18 ballots not counted for either of the candidates, 16 of the same had a cross (X) in the square opposite the names of both W. W. Mitchell and B. F. Evans, and were considered as mutilated ballots.

It is further shown that the crosses appearing on the 16 ballots were not placed thereon by the voters of the ballots. The testimony of a number of the voters who participated in the primary shows that W. W. Mitchell received a greater number than 36 votes for which he was given credit; 48 citizens testify they voted for W. W. Mitchell, and that they did not vote for any other candidate for county commissioner.

The defendants admit they constitute the precinct election board for Boyd precinct No. 2; that they served as inspector, judge, and clerk in the run-off primary; that W. W. Mitchell and B. F. Evans were seeking the nomination on the Democratic ticket for county commissioner of district No. 2. It is further shown that Campion is the father-in-law of E. G. Boyd, and that the counters at said precinct election, at the run-off primary, were the wives of the defendants, Abercrombie, Campion, and Boyd. This was a rural precinct and the election was held in Bell schoolhouse; there was a light vote cast; they commenced counting about 4 o'clock in the afternoon. The defendants deny they had anything to do with stamping the ballots, or causing to be placed an "X" in front of the names of Mitchell and Evans on the 16 ballots introduced in evidence, and they further deny they have any knowledge as to who had placed this "X" in front of the names of the two candidates, Mitchell and Evans.

The record contains 435 pages. We have set out the substance of the testimony we deem necessary to refer to in arriving at an opinion as to whether or not the defendants were accorded a fair and impartial trial, and whether the evidence is sufficient to sustain a conviction.

The defendants assign several errors alleged to be sufficient to warrant a reversal of this case. The first as-

signment discussed by the defendants is, that the court erred in overruling their motion to quash the information. The grounds for the motion to quash the information is that the said defendants have not had a preliminary examination on said charge as provided by law.

The defendants have not waived a preliminary examination; the charge as set forth in the information is different from the charge in said complaint; the magistrate certified, or attempted to certify two separate or distinct crimes; the magistrate did not indorse on the complaint the order signed by him as provided by law, that the crime had been committed; that the said magistrate did not determine that any crime had been committed. The information filed has two counts, the first count charging the defendants with knowingly, willfully, unlawfully, intentionally, feloniously, and corruptly defacing, injuring, and destroying certain county ballots. The second count charges that these defendants knowingly, willfully, unlawfully, feloniously, negligently, and corruptly permitted a person or persons, whose name or names are unknown to the county attorney, to deface, injure, and destroy the ballots regularly voted at said precinct.

Section 2497, C. O. S. 1921, now section 2806, O. S. 1931, is as follows:

"If, however, it appear from the examination that any public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate must in like manner indorse on the complaint an order signed by him to the following effect:

"It appearing to me that the offense named in the within complaint mentioned (or any other offense, according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to be-

lieve that the within named A B guilty thereof, I order that he be held to answer the same."

The defendants argue with great force that the complaint in this case was not signed and indorsed by the magistrate as required by the statute, and therefore the county attorney was without jurisdiction to file the information, and their motion to quash should have been sustained, citing Steiner v. State, 33 Okla. Cr. 298, 243 Pac. 1002, to sustain their position. In Steiner v. State, supra, the court properly held that there was not a sufficient finding or order of the examining magistrate filed with the clerk of the superior court to give the court jurisdiction. The motion of the defendants in this case would be well taken if the same condition of the record of the examining magistrate appeared as it did in the Steiner Case, but from an examination of the transcript we find the magistrate's proceedings to have been properly signed by the magistrate, and the certificate to the same properly signed; the certificate of the court sitting as an examining magistrate certifies that the foregoing is a true statement of all the proceedings had in the above-entitled cause, a true transcript of the docket entries in said cause as same now appears in the preliminary docket in his office.

From this transcript it clearly appears that the examining magistrate found facts from the evidence adduced at the preliminary hearing that a public offense had been committed, and that there was sufficient cause to believe the defendants guilty of the said offense. This transcript of the examining magistrate was sufficient to give the district court jurisdiction and to authorize the county attorney to file an information. The motion of the defendants to quash the information was properly overruled.

The next error argued by the defendants is that the court erred in overruling the demurrer to the information,

the first ground of the demurrer being the information does not state sufficient facts to constitute an offense against the laws of the state of Oklahoma; and the second ground is, that the information does not state an offense, it states two offenses against the laws of the state of Oklahoma. The defendants contend their demurrer should be sustained for the reason that the information fails to state an offense, there being no allegation that the said defendants were duly appointed by any one having the authority to make such appointments and that they were qualified to hold said election. No authorities are cited by the defendants to sustain their position, or to show that the court erred in overruling their demurrer. The information stated sufficient facts in concise language to advise the defendants of the crime charged against them. The court did not err in overruling the demurrer. Section 2886, O. S. 1931; Little v. State, 21 Okla. Cr. 1, 204 Pac. 305; Payne v. State, 30 Okla. Cr. 218, 235 Pac. 558.

Section 2893, O. S. 1931, is as follows:

"Neither presumptions of law, nor matters of which judicial notice is taken, need be stated in an indictment or information."

In Teague v. State, 13 Okla. Cr. 270, 163 Pac. 954, it is held:

"An information is sufficient, if it pleads every element essential to charge the crime pleaded, in plain, concise, and intelligible language, and apprises the defendant in an intelligible way of precisely what he must be prepared to meet."

The defendants, in their brief, discuss assignments four and five together. These assignments relate to the admission of state Exhibits 1 and 2, which exhibits show

the ballots cast at the primary election, and those claimed to be mutilated. The main argument presented by the defendants is that there was no order of the court permitting the ballot boxes to be opened and allowing the ballots to be used in court as evidence. The exhibits of the state tended to show the condition of the ballots as voted, and to show that one of the candidates, W. W. Mitchell, had not received as many votes as the witnesses who testified stated they had voted for him. The court did not err in admitting the exhibits.

Complaint is made that the court erred in its instructions to the jury. This court has repeatedly held that the instructions must be considered as a whole, and, when considered together, if they fairly and correctly stated the law applicable to the case, they will be sufficient. The instructions of the court when considered together correctly state the law applicable to the facts. If the defendants were not satisfied with the instructions given by the court, they should have submitted instructions covering the points of law they thought were not covered by the court's instructions. There is some conflict in the testimony. This court has so often held that where there was any competent evidence to sustain the verdict of the jury, though the evidence was conflicting, it would not set up its judgment against the judgment of the jury.

Other errors have been assigned by the defendants but they do not possess sufficient merit to warrant them being considered. The defendants were accorded a fair and impartial trial. The court correctly instructed the jury as to the law applicable to the facts. No errors appearing in the record warranting a reversal, the judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.